Filed 7/27/2017 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CURTIS MARQUIS TURNER,<br><br>        Defendant and Appellant. | A147603<br><br>(Contra Costa County<br>Super. Ct. No. 5-151786-1)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

BY THE COURT:

It is ordered that the opinion filed herein on July 10, 2017, be modified as follows:

1. On page 9, first sentence, footnote 2 will be moved to between the words "Code" and "section."

2. On page 9, at the end of the first sentence, add as footnote 3 the following footnote, which will require renumbering of all subsequent footnotes:

    [3] Our record does not definitively confirm that the ammunition found in Turner's duffel bag was Fiocchi .38 caliber Super-Auto, but the trial court and the parties, both below and on appeal, assumed that the two types of ammunition were identical. Even if they were different in some respect, it would not affect our holding.

There is no change in judgment.

Dated:

_____
Humes, P.J.

1

Filed 7/10/2017 (unmodified version)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>CURTIS MARQUIS TURNER,<br><br>    Defendant and Appellant. | A147603<br><br>(Contra Costa County<br>Super. Ct. No. 5-151786-1) |

After defendant Curtis Turner refused to leave a restaurant, he was arrested for interfering with a business establishment under Penal Code section 602.1, subdivision (a), and a revolver, ammunition, and methamphetamine were found in his duffel bag. A jury convicted him of various crimes based on his possession of these items, and the trial court placed him on probation for three years.

On appeal, Turner contends that the trial court erred by (1) denying his motion to suppress the contraband and (2) admitting evidence of a previous arrest during which he was found in possession of the identical type of ammunition. We hold that the court properly denied the motion to suppress because the contraband was discovered in an inventory search after an arrest supported by probable cause. We also hold that the court properly admitted evidence of Turner's prior possession of the same type of ammunition because it impeached his specific testimony suggesting that the police planted the contraband in this case. Therefore, we affirm.

1

# I.
## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Preliminary Hearing and the Motion to Suppress.*

The following facts are drawn from the preliminary hearing and formed the basis for Turner's motion to suppress.

In the early morning of September 15, 2015, San Pablo Police Officer Greg Niemi responded to a Nation's restaurant after receiving a report that a man was "refusing to leave."  When Officer Niemi arrived, the restaurant manager pointed to a booth where the officer saw a man "slouched over" who "appeared to be sleeping, leaning on a duffel bag, with a jacket pulled over his head."

Officer Niemi approached the booth and "called out to [the man] several times," but the man did not respond.  Officer Niemi then touched the man's shoulder and continued speaking to him, and the man eventually told him to go away.  Officer Niemi lifted the man's jacket off his head and recognized the man as Turner, whom the officer had frequently seen "near or in front of Nation's restaurant" after "being dispatched there for the same reason."

After pulling the jacket off Turner's head, Officer Niemi told Turner that he needed to leave.  Turner did not respond.  Officer Niemi then noticed a cell phone charger plugged into an outlet behind Turner's booth, unplugged the charger, and put it on top of Turner's jacket while again informing Turner that he needed to leave.

Turner eventually began searching for his cell phone, first around his booth and then in nearby garbage cans and unoccupied booths.  After Turner was unable to find it, Officer Niemi told him he could file a lost property report, but Turner responded that he did not want to do so.  Then, in "[s]omewhat of an agitated tone, not overly loud," Turner accused the officer of stealing the phone.  Officer Niemi told Turner yet again that he needed to leave the restaurant, and the officer then picked up Turner's duffel bag and carried it outside.  On the way, Turner asked the restaurant manager to call his cell phone, which she did.  Turner then followed Officer Niemi outside.

2

Once outside, Officer Niemi put Turner's duffel bag next to a planter box outside the front door. Officer Niemi again told Turner that he needed to leave, but Turner instead began looking into the restaurant's windows and checking the planter boxes. As Turner continued to do this for three or four minutes, Officer Niemi advised him that he needed to leave or he would be arrested. Some customers began to walk into the restaurant, and Turner asked them "to keep an eye out for his cell phone[,] and he asked another customer to try to call his cell phone." After the customers had gone inside, Turner opened the door and again asked one of the customers to try to find his cell phone.

Officer Niemi went back inside and asked the restaurant manager "if she wanted [Turner] removed from the property," and she said "she wanted him arrested for trespassing." She then signed a form for a citizen's arrest and request for prosecution. She told Officer Niemi that Turner had been in the restaurant, which is open 24 hours a day, for about eight hours and had been asked to leave approximately four times.

Officer Niemi returned outside, where Turner was standing in front of the restaurant's windows and now holding the duffel bag. The officer took the bag and placed Turner in handcuffs. Officer Almir Dugonjic arrived and transported Turner and his bag to the police station, where Turner was booked.

Officer Niemi testified that the San Pablo Police Department has a standard policy when arresting someone of "conduct[ing] an inventory search on any property logged in for safekeeping . . . to create a list of any valuable items that might possibly be in the property, as well as anything that might potentially be dangerous." Due to a "miscommunication" between him and Officer Dugonjic, Officer Niemi did not conduct an inventory search of Turner's duffel bag until about 18 hours after the arrest. Officer Niemi had asked Officer Dugonjic to conduct an inventory search before putting the bag in an evidence locker, but Officer Dugonjic did not do so. When Officer Niemi searched Turner's duffel bag, he found a fully loaded .38 caliber six-shot revolver that appeared to be functioning, a 50-round box containing 44 rounds of .38 caliber ammunition, which matched the ammunition in the revolver, and a niacin pill bottle with a white crystalline

3

substance inside that was later determined to be slightly over three grams of methamphetamine.

Turner filed a motion to suppress that the magistrate heard at the preliminary hearing. After considering the parties' argument on whether there was probable cause to arrest Turner for various forms of trespass, the magistrate denied the motion without giving its reasons for doing so. The People then filed an information charging Turner with a felony count of possession of a firearm by a felon, a felony count of possession of ammunition by a felon, and a misdemeanor count of possession of methamphetamine.[1]

Before trial, Turner filed a renewed motion to suppress and a motion to dismiss the information under Penal Code section 995, both of which contended that the magistrate erred in denying the original motion to suppress because Officer Niemi lacked probable cause for the arrest. Turner relied on the transcript of the preliminary hearing and did not present any new evidence. The trial court denied the motions, ruling that there was probable cause to arrest Turner for a violation of Penal Code section 602.1, subdivision (a) (section 602.1(a)), which makes it a misdemeanor to refuse to leave a business establishment after intentionally interfering with the business.

B.      *The Trial and Sentencing.*

At trial, the prosecution's case focused on the circumstances surrounding Turner's arrest and the search of his duffel bag. Turner testified in his own defense and admitted that the niacin bottle was his but denied that the revolver, ammunition, or methamphetamine were his or had been in his duffel bag before the arrest. According to Turner, after Officer Niemi went back inside the Nation's restaurant to speak with the manager, he remained outside talking with Officer Dugonjic. When Officer Niemi came back outside, he seemed "upset," and he placed Turner under arrest once he saw Turner talking to the other officer. Turner testified that after being placed in Officer Dugonjic's

---

[1] Turner was charged under Penal Code sections 29800, subdivision (a)(1) (possession of firearm) and 30305, subdivision (a)(1) (possession of ammunition) and Health and Safety Code section 11377 (possession of methamphetamine). At the People's request, the trial court dismissed before trial an additional count of possession of methamphetamine while armed.

4

car, he saw Officer Niemi "thoroughly" search the duffel bag and then put it in the trunk. According to Turner, he did not learn that the revolver, ammunition, and methamphetamine were found in the duffel bag until he returned to the police station to claim the bag. The trial court allowed the prosecution to impeach Turner's testimony with evidence that he possessed the same type of ammunition when arrested for an unrelated crime a month earlier.

The jury found Turner guilty of all three charges. The trial court suspended imposition of the sentence and placed him on probation for three years.

## II.
### DISCUSSION

### A.     *The Trial Court Properly Denied the Motion to Suppress.*

####     1.     General legal standards.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.) " ' "[W]here a search is undertaken by law enforcement officials to discover evidence of criminal wrongdoing, . . . reasonableness generally requires the obtaining of a judicial warrant." ' " (*Id.* at p. 1213.) One exception, however, is an inventory search after a lawful arrest. (*Illinois v. Lafayette* (1983) 462 U.S. 640, 643.) This exception permits "police to search the personal effects of a person under lawful arrest as part of the routine administrative procedure at a police station house incident to booking and jailing the suspect." (*Ibid.*)

On appeal, Turner contends that his arrest was unlawful. But he does not dispute that if his arrest was lawful, then the search was valid. The Attorney General contends that Turner's arrest was lawful. But he does not dispute that if it was unlawful, then the search was invalid, the evidence seized from Turner's bag should have been suppressed, and the error in admitting the evidence was prejudicial under *Chapman v. California* (1967) 386 U.S. 18. (See *People v. Neal* (2003) 31 Cal.4th 63, 86.) Thus, the parties agree that the determinative issue is whether there was probable cause to support the arrest. (See *People v. Kraft* (2000) 23 Cal.4th 978, 1037 (*Kraft*).)

5

A defendant may file a motion to suppress at the preliminary hearing based on the evidence introduced at that hearing. (Pen. Code, § 1538.5, subd. (f)(1).) If the magistrate denies the motion, the defendant may either renew the motion before the trial court or file a motion to dismiss under Penal Code section 995 raising the suppression issue. (*People v. Superior Court (Cooper)* 114 Cal.App.4th 713, 717; see Pen. Code, § 1538.5, subds. (i) & (m).) When the defendant files a renewed motion to suppress, the trial court independently reviews the magistrate's legal conclusion and evaluates any new evidence presented, and we review the court's determination. (*Cooper*, at p. 717.) In contrast, when the defendant raises the suppression issue in a section 995 motion, the trial court reviews the magistrate's determination for substantial evidence, and we review the magistrate's determination, not the court's. (*Cooper*, at p. 717.) The parties appear to agree that although Turner filed both a renewed motion to suppress and a section 995 motion, we should review the magistrate's determination, and we conclude it is appropriate to do so because Turner did not introduce any new evidence at the time he filed the motions.

" 'In ruling on a motion to suppress, the [magistrate] must find the historical facts, select the rule of law, and apply it to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the [magistrate's] resolution of the factual inquiry under the deferential substantial evidence standard. Whether the relevant law applies to the facts is a mixed question of law and fact that is subject to independent review.' " (*People v. Casares* (2016) 62 Cal.4th 808, 835.)

2.      Officer Niemi had probable cause to arrest Turner.

Turner claims his arrest was not supported by probable cause. We disagree.

"Probable cause to arrest exists if facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." (*Kraft, supra*, 23 Cal.4th at p. 1037.) "[T]he probable-cause standard is a ' "practical, nontechnical conception" ' that deals with ' "the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act," ' " and it "is incapable of precise definition or quantification

into percentages because it deals with probabilities and depends on the totality of the circumstances." (*Maryland v. Pringle* (2003) 540 U.S. 366, 370-371.) " '[T]he substance of all the definitions of probable cause is a reasonable ground for belief of guilt,' " and "the belief of guilt must be particularized with respect to the person to be searched or seized . . . ." (*Id.* at p. 371.) In determining whether probable cause to make an arrest existed, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause . . . ." (*Ibid.*)

Although the parties discussed several trespass-related statutory provisions as possible bases for Turner's arrest in litigating the motions below, the Attorney General exclusively relies on section 602.1(a) in arguing that probable cause existed. Section 602.1(a) provides that "[a]ny person who intentionally interferes with any lawful business or occupation carried on by the owner or agent of a business establishment open to the public, by obstructing or intimidating those attempting to carry on business, or their customers, and who refuses to leave the premises of the business establishment after being requested to leave by the owner or the owner's agent, or by a peace officer acting at the request of the owner or owner's agent, is guilty of a misdemeanor . . . ." It is undisputed that Turner refused to leave after both the restaurant's employees and Officer Niemi asked him to do so. Therefore, to determine whether the officer had probable cause to arrest Turner for a violation of section 602.1(a), we need only decide whether the officer was aware of facts sufficient to cause a reasonable person to believe that Turner intentionally interfered with the restaurant's business by obstructing or intimidating the restaurant's employees or customers. (See *Kraft, supra*, 23 Cal.4th at p. 1037.)

Turner argues that there was "no evidence he intentionally interfered with [the restaurant's] business by obstructing or intimidating any of its employees or customers." He acknowledges that he refused to leave when asked to do so, but he contends that this refusal alone does not establish his intent to interfere with the restaurant's business, relying on *Dubner v. City & County of San Francisco* (9th Cir. 2001) 266 F.3d 959. In

*Dubner*, an action under 42 United States Code section 1983, the Ninth Circuit Court of Appeals held that there was not probable cause to arrest the plaintiff for violating section 602.1(a) where the plaintiff was merely taking photographs of protestors at a convention from eight to ten feet away from the convention center's doors and was "conversing with convention attendees and protestors." (*Dubner*, at pp. 966-967.) In particular, the court rejected the "argument that intent to interfere [could] be inferred from [the plaintiff's] refusal to leave." (*Id.* at p. 966.) Turner argues that other than his refusal to leave, there was no evidence of intentional interference with the restaurant's business because his requests that various people help him locate his cell phone were not intimidating and "he did not block anyone from entering" or cause "anyone not [to enter] the restaurant, [leave] the restaurant, or not [be] seated or served in a timely manner."

We are not persuaded. Even assuming that Turner's intent to interfere could not be inferred solely from his refusal to leave, there were sufficient other facts known to Officer Niemi to establish probable cause. First, unlike the plaintiff in *Dubner*, Turner was asked multiple times over a span of hours to leave the restaurant. (See *Dubner v. City and County of San Francisco, supra*, 266 F.3d at p. 963 [police gave general dispersal order and plaintiff testified she did not hear it].) Second, the restaurant's manager had to interrupt her duties not only to ask Turner to leave, but also to call the police, talk to Officer Niemi, and fill out paperwork. Finally, Officer Niemi testified that he had been called to the restaurant several times before because Turner refused to leave. These circumstances were sufficient to create a reasonable suspicion that Turner was guilty of violating section 602.1(a).

B. *The Trial Court Did Not Abuse Its Discretion by Admitting Evidence of Turner's Prior Possession of Ammunition to Impeach Specific Testimony.*

Turner claims that the trial court prejudicially erred by admitting evidence that he was found in possession of the same type of ammunition during an earlier arrest. We conclude there was no abuse of discretion.

8

1.    Additional facts.

The prosecution filed a motion in limine under Evidence Code section 1101, subdivision (b), seeking to admit evidence that Turner had been arrested approximately a month before the incident at issue and found in possession of the same type of ammunition, Fiocchi .38 caliber Super-Auto, as was found in his duffel bag.[2]  After hearing argument from the parties, the trial court denied the motion.  It determined that evidence of the prior possession of ammunition was inadmissible on the issue of Turner's knowledge of his possession of the revolver or ammunition and was unduly prejudicial under section 352 as it "may certainly be propensity evidence."  The court noted, however, that it would be willing to revisit the issue depending on Turner's testimony.

Turner's testimony on direct examination focused on the circumstances surrounding his arrest, and his testimony about the ammunition was essentially limited to two comments.  First, after ascertaining that the duffel bag was Turner's, Turner's trial counsel asked, "On that day, did you have ammunition in your bag?"  Turner responded, "No."  Second, after Turner testified that when he returned to the police station to claim his bag, he was told he was being arrested because he "had a firearm, box of bullets, and some dope in [his] bag," his counsel asked, "Was that the first time you had heard anything about this?"  Turner responded affirmatively, and counsel then asked, "And did you know that you didn't have those items in your possession?"  Turner responded, "Yes."

Immediately after Turner's direct examination, the prosecution renewed its request to admit evidence of his prior possession of ammunition on the theory that Turner had now "essentially . . . said that this is [an] officer frame-up or this is an officer conspiracy, because his testimony directly contradict[ed that of] Officer Niemi."  The prosecutor argued the evidence was therefore admissible to impeach Turner's testimony.  The trial court reaffirmed its ruling that the evidence was inadmissible on the issue of Turner's knowledge of his possession of the revolver.  The court ruled that the evidence was

---

[2] All further statutory references are to the Evidence Code.

admissible, however, to impeach Turner's testimony that "on this occasion . . . he did not have ammunition in his bag," explaining,

> "But certainly if a month before he had the exact type of ammunition that is being referenced here and he was found with . . . such ammunition in his possession, then that would impeach his credibility on that issue. So I think because of our opening the door here with respect to the officer framing him . . . somehow[,] the implication being that [the officer] placed this ammunition in [Turner's] bag[,] that certainly [Turner's] credibility should be tested on this issue, given that he . . . had the exact type of ammunition in his possession 30 days earlier."

Turner indicated that he would not invoke his Fifth Amendment privilege not to testify about the earlier arrest, which was associated with an open case. On cross-examination, he then reaffirmed that the ammunition in the duffel bag was not his and that it had not been in his bag on the day Officer Niemi arrested him. Turner also testified that he had never seen the ammunition before, had never opened the box, and had not loaded the revolver. He indicated that he thought it was possible that Officer Niemi had framed him but stated, "I can't say what happened at the station. All I can tell you is what doesn't belong to me and what was in my bag at the time. But as far as who did what, I wasn't there for that part, for that matter, so I couldn't state."

The prosecutor then questioned Turner about his earlier arrest. Turner denied that he had possessed a box of identical ammunition on that occasion or that he had ever possessed such ammunition. In rebuttal, another San Pablo police officer testified that he had previously arrested Turner for vandalism. Turner had had a different bag with him at the time, and when the officer conducted an inventory search of it approximately 30 minutes after the arrest, he discovered a 50-round box of Fiocchi .38 caliber Super-Auto ammunition inside.

> 2. Evidence that Turner previously possessed ammunition was admissible to impeach his testimony on specific points.

Section 1101 limits the admission of prior misconduct to prove conduct on a particular occasion, but it does not "affect[] the admissibility of evidence offered to support or attack the credibility of a witness." (§ 1101, subds. (a), (c).) Generally

speaking, evidence "that has any tendency in reason to prove or disprove the truthfulness of a [witness's] testimony" is admissible. (§ 780; see also § 210.) Although "[n]ot all past misconduct has a 'tendency in reason to prove or disprove' a witness's honesty and veracity" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295), "[a] witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under . . . section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931.) Section 352, in turn, permits a trial court to "exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.)

Prior misconduct can also be admissible to impeach a witness under section 780, subdivision (i)—which applies to evidence that tends to establish "[t]he existence or nonexistence of any fact testified to by [the witness]"—by suggesting a particular aspect of the witness's testimony is untrue. (*Andrews v. City and County of San Francisco* (1988) 205 Cal.App.3d 938, 946 (*Andrews*); see also *People v. Harris* (1981) 28 Cal.3d 935, 953.) The admission of impeachment evidence on this ground remains subject to section 352. (*Andrews*, at p. 947.)

The trial court has broad discretion in determining whether to admit impeachment evidence, including whether it is subject to exclusion under section 352. (*People v. Clark, supra*, 52 Cal.4th at pp. 931-932.) Thus, we review the court's admission of such evidence for an abuse of discretion. (*People v. Edwards* (2013) 57 Cal.4th 658, 722.)

Turner argues that the evidence of his prior possession of ammunition was inadmissible "to attack his specific denial of possession of ammunition when [Officer] Niemi arrested him" because the evidence did not contradict that testimony. We accept that there was no direct contradiction, in the sense that it could be true both that Turner possessed ammunition on the prior occasion and not on the occasion leading to the arrest in this case. His only testimony on direct examination about the ammunition was to deny that he had it when Officer Niemi arrested him, and he did not claim that he had *never* possessed ammunition. Nor did the evidence of his prior possession of ammunition

11

directly contradict any of his testimony on cross-examination.  Instead, his answers were confined to the particular box of ammunition found in his duffel bag.  Thus, we agree with Turner that this case is distinguishable from cases holding that "a specific instance of conduct is admissible as impeachment evidence when it rebuts a broad statement by the witness" because, unlike the witnesses in those cases, he "did not make a sweeping claim, such as that he had never possessed ammunition," that evidence of his prior possession of ammunition would contradict.  (See, e.g., *Andrews, supra*, 205 Cal.App.3d at pp. 941-943, 945-946 [evidence of complaints against officer for violent behavior admissible to impeach his testimony that he was generally "patient" with arrestees]; *People v. Cooks* (1983) 141 Cal.App.3d 224, 324 [cross-examination of defendant about his conviction for handgun possession admissible to impeach his testimony that he had never possessed a gun].)

But there is no requirement that impeachment evidence directly contradict a witness's testimony to be admissible; it need only *tend* to prove that the witness is not credible.  (See § 210.)  *People v. Millwee* (1998) 18 Cal.4th 96 (*Millwee*) is instructive.  In that case, a capital defendant testified that he had accidentally shot his mother when "the gun misfired . . . as the result of a sudden 'jolt' in his leg."  (*Id.* at pp. 107, 129.)  The trial court permitted the prosecution to introduce the defendant's testimony from another trial involving an incident two days after his mother's death, in which he claimed he had accidentally shot another man while showing him the same gun.  (*Id.* at pp. 116, 129-130.)  Our state Supreme Court concluded that the evidence was properly admitted to demonstrate "the implausibility and untruthfulness of [the] defendant's testimony in the capital case" because the defendant "sought to avoid responsibility for both shootings by offering the same innocent explanation in each case.  He testified in proceeding that he was thinking about selling the gun, that he was holding it oddly by the trigger, and that a sudden distraction caused the gun to shift and discharge in the direction of an unintended victim.  The jury could readily find that [the] defendant's credibility in the [capital] case was diminished by the fact that he offered the same explanation for another shooting that

occurred only 48 hours later."[3] (*Id.* at p. 131.) Thus, the testimony from the earlier case was valid impeachment evidence because it cast doubt on the defendant's story, even though it did not *necessarily* establish that the defendant was lying since it was theoretically possible that both shootings were accidental.

Likewise, evidence that Turner possessed the same type of ammunition a month before his arrest in this case cast serious doubt on his defense that the police planted the ammunition here. As *Millwee* suggests, evidence impeaches a witness's testimony if it reveals that the believability of that testimony depends on the occurrence of a major coincidence. We agree with the trial court that evidence of Turner's prior possession of ammunition was valid to impeach his testimony because it undermined his credibility about the incident in question.[4]

Turner claims that the trial court should have nevertheless excluded the evidence of his prior possession of ammunition because it was unduly prejudicial under section 352. "Without doubt, evidence a defendant committed an offense on a separate occasion is inherently prejudicial," but such evidence is subject to exclusion under section 352 "only when its probative value is *substantially* outweighed by its prejudicial

---

[3] Our state Supreme Court also noted that the defendant testified in the earlier case that he had not known the gun was loaded but admitted in the capital case that he had shot his mother, a "critical discrepancy between the two accounts." (*Millwee, supra*, 18 Cal.4th at p. 131.) Although this portion of the previous testimony may have further justified the evidence's admission, we do not think it was essential to *Millwee*'s holding. In particular, this portion of the previous testimony impeached the defendant's testimony in the capital case only to the extent it revealed he had lied about an unrelated issue, not by undermining any specific part of the capital-case testimony.

[4] In so concluding, we do not rely on Turner's testimony on cross-examination, during which Turner offered essentially the same excuse of police misconduct for the earlier incident as well. Although this would appear to bring our case even more in line with *Millwee*, the prosecutor would not have pursued such questioning here but for the trial court's ruling that evidence involving the earlier incident was admissible, and "[a] party may not cross-examine a witness upon collateral matters for the purpose of eliciting something to be contradicted," particularly "where the matter the party seeks to elicit would be inadmissible were it not for the fortuitous circumstance that the witness lied in response to the party's questions." (*People v. Lavergne* (1971) 4 Cal.3d 735, 744.)

effect" to the extent " 'it poses an intolerable "risk to the fairness of the proceedings or the reliability of the outcome." ' " (*People v. Tran* (2011) 51 Cal.4th 1040, 1047.) " 'The prejudice that section 352 " 'is designed to avoid is not the prejudice or damage to a defense that naturally flows from relevant, highly probative evidence.' [Citations.] 'Rather, the statute uses the word in its etymological sense of "prejudging" a person or cause on the basis of extraneous factors. [Citation.]' [Citation.]" [Citation.] In other words, evidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the [jurors], motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction. In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.' " (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

In arguing that the standard for exclusion under section 352 was met, Turner relies on *People v. Williams* (2009) 170 Cal.App.4th 587, which he contends establishes that evidence of prior arrests, as opposed to convictions, "is not admissible for impeachment." In *Williams*, the Fourth District Court of Appeal concluded that evidence of a defendant's prior arrests for various crimes "was inadmissible either as proof of guilt or for impeachment." (*Id.* at pp. 609-610.) The court observed, "Generally, evidence of mere arrests that do not result in convictions is inadmissible because such evidence invariably suggests the defendant has a bad character," and "prior convictions minimize the risk the jury would be tempted to punish the defendant for the uncharged acts." (*Ibid.*) *Williams* is distinguishable, however, because in that case evidence of the defendant's prior arrests was admitted to prove gang-related crimes and enhancements, and there is no indication that this evidence impeached his testimony on any particular point as opposed to just reflecting negatively on his general veracity. (See *id.* at pp. 595, 598-600, 603.) *Williams* does not stand for the proposition that an arrest is inadmissible for any type of impeachment. Moreover, although Turner's possession of ammunition was uncovered during his arrest for vandalism, it was his possessing ammunition, not the arrest, that was relevant to impeach his testimony.

14

Turner also argues that two other factors weighed in favor of excluding the evidence of his prior possession of ammunition, but neither is relevant here. He contends that "because possessing ammunition does not reflect on [his] honesty or veracity, its value as impeachment evidence [was] minimal." The trial court admitted the evidence on the basis that it specifically undermined Turner's defense that the police may have planted ammunition in his bag, however, not that it tended to disprove his general truthfulness. Similarly, he questions "whether simple possession of ammunition involves moral turpitude," but again, there was no requirement that the prior misconduct involve moral turpitude for it to be admitted to impeach specific testimony as opposed to general truthfulness. That the prior misconduct may have reflected little on Turner's honesty or moral character did not reduce its relevance to impeach his specific testimony.

The evidence of Turner's prior possession of ammunition was relevant to cast doubt on his defense that the police may have planted the ammunition in this case, and it was not especially inflammatory when compared to the charged crimes. Moreover, the trial court instructed the jury under CALCRIM No. 316 that it could consider the evidence Turner had previously committed misconduct only to evaluate the credibility of his testimony, further guarding against the risk of undue prejudice. (See *People v. Doolin, supra*, 45 Cal.4th at p. 439.) Turner fails to convince us that the court abused its discretion in declining to exclude the evidence under section 352.

### III.
### DISPOSITION

The judgment is affirmed.

_____
Humes, P.J.

We concur:

_____
Dondero, J.

_____
Banke, J.

*People v. Turner*  A147603

16

Trial Court:

    Superior Court of the County of Contra Costa


Trial Judge:

    Hon. Diana Becton


Counsel for Defendant and Appellant:

    Jeffrey A. Glick

    Curtis Marquis Turner, First District Appellate Project

Counsel for Plaintiff and Respondent:

    Xavier Becerra, Attorney General

    Gerald A. Engler, Chief Assistant Attorney General

    Jeffrey M. Lawrence, Senior Assistant Attorney General

    Leif M. Dautch, Deputy Attorney General

    Jalem Z. Peguero, Deputy Attorney General