Filed 5/27/21  P. v. Hamilton CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B306130 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA148917) |
| v. | |
| JEMJO HAMILTON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Danette J. Gomez, Judge.  Affirmed.

Jason Szydlik, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

A jury convicted Jemjo Hamilton of injuring a spouse and dissuading a witness. He contends on appeal that the trial court erroneously admitted evidence of a telephone call between himself and the victim and prejudicially failed to instruct the jury on the lesser included offense of battery on a spouse. We reject both contentions and affirm the judgment.

## BACKGROUND

I.    Domestic violence

Hamilton and the victim were married and lived together. On April 20, 2019, while they were at home, Hamilton punched the victim several times in the face and caused her earring to be ripped off.

The victim called 911 and reported that Hamilton injured her head. A deputy sheriff of Los Angeles County responded to the domestic violence call. When the deputy arrived, Hamilton was not there. The deputy interviewed the victim and noticed that her face was swollen, she had multiple contusions around her right eye, and her right earring had been ripped off.

Gone for almost three weeks, Hamilton returned home on May 9, 2019 and appeared high on methamphetamine. The victim hid in the bathroom and called 911. She told the 911 operator that Hamilton was trying to enter the bathroom and hurt her. The operator heard Hamilton yelling at the victim to "get out here."

Another deputy sheriff responded to the call. When the deputy arrived, Hamilton and the victim were home. The victim told the deputy about the April 20 domestic violence incident and Hamilton was arrested.

2

II.    Dissuading a witness

Beginning soon after his arrest and continuing through trial, Hamilton called the victim over 900 times from jail.

During a jail call on May 10, 2019, the victim told Hamilton that she would tell the detective that she was "not here to throw [Hamilton] in jail" but that Hamilton "need[ed] some help." Hamilton responded, "You don't tell them none of that shit. [¶] . . . [¶]  See, that's the problem, you don't know nothing.  You don't tell them that, man.  You don't say nothing.  Y'all—y'all talk too much out there.  You don't say that, He needs some help."  In another jail call that same day, Hamilton told the victim that if she "walk[ed] out" on him, "we gone have problems" after his release and that he was "not gonna let [nobody] do this to me and get away with it."  In yet another call that same day, Hamilton told the victim, "You did this to me because you didn't have to go tell no motherfucking police and no damn report or nothing.  You could've just let them let me go like they was getting ready to.  But you put me here.  You did this to me.  You did this to me.  But one thing, I won't be in here forever.  They gotta let me out one day.  If it means that much to you, that you had to go snake me like that?  Yeah, you did that.  I hope you sleep good with that, that knowing you did that, knowing that I came here and did nothing to you, you know what I'm saying."  He also told her, "What you need to do, you need to get me out of this."  A few days later, the victim told Hamilton that she was "not gonna talk" at the next court date.

At the preliminary hearing, the victim refused to answer nearly every question posed by the prosecutor, stating "I refuse to testify against my husband."  The court ordered the victim to answer and informed her that the marital privilege did not apply

in this case because she was the alleged victim of her husband's violent conduct. After the preliminary hearing and before trial, the victim told the prosecutor that she was not going to come to court because she did not want to testify against her husband.

The victim testified at trial. However, she recanted her testimony regarding the April 20 domestic violence. She testified that, when she came home that day, she found Hamilton at home with his mistress. The victim struck the mistress and then the mistress hit her back, injuring the victim's face. Hamilton tried to break up the fight and the victim tried to strike him. At that point, Hamilton restrained the victim, trying to "wrestle [her] down." The victim claimed that she lied to investigators about the fight to avoid arrest for hitting the mistress. She also claimed that Hamilton never tried to dissuade her from coming to court and asserted that the trial court ordered her not to tell the truth.

III.   Procedure

A jury convicted Hamilton of intimidating a witness (Pen. Code,[1] § 136.1, subd. (b)(2); count 1) and injuring a spouse (§ 273.5, subd. (a); count 2).[2] The trial court then found true the allegations that Hamilton suffered one qualifying prior conviction under the "Three Strikes" law (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d)) and one prior serious felony conviction (§ 667,

---

[1] All further undesignated statutory references are to the Penal Code.

[2] The basis for count 1 was the May 10, 2019 phone calls.

4

subd. (a)(1)) for making criminal threats in violation of section 422.

The trial court sentenced Hamilton to 12 years 4 months in prison. Hamilton appealed.

## DISCUSSION

I.    Evidence of the phone call was admissible to impeach the victim.

Hamilton contends that the trial court erred when it admitted evidence that he called the victim during a trial recess and told her to defy the court's orders. He claims that the evidence was irrelevant and highly prejudicial because it was evidence of a prior bad act. We disagree.

### A.    *Additional background*

Prior to trial, the prosecution moved to exclude any evidence regarding Hamilton's mental health. However, later, the prosecution sought to admit evidence of a phone call in which Hamilton discussed the April 20 domestic violence while redacting a portion of the call where Hamilton stated he had "been off [his] medication." The trial court indicated that the requested redaction would be inappropriate under Evidence Code section 356 and told the prosecutor "either it all comes in or none of it comes in." The prosecution withdrew the evidence. After the withdrawal, Hamilton asked the trial court if his mental health was being excluded from evidence. The trial court responded that Hamilton's mental health was not relevant to the charges.

During the victim's testimony, she stated that the trial court "ordered [her] not to say the truth." The trial court admonished the victim, stating that it had made no such order. After excusing the jury, the trial court asked the victim what she

5

was referring to and the victim stated that the trial court had ordered her not to talk about Hamilton's "psychosis" and "medication." The trial court explained to the victim that those topics were irrelevant and again ordered her not to talk about them during her testimony.

After the victim completed her trial testimony, the prosecution sought to call a detective as a witness, who would testify that during the lunch break taken during the victim's testimony, Hamilton called the victim and told her to defy the court's orders. The prosecution argued that the call was relevant to show the victim's bias and motive in her testimony and was not being offered for the truth of the matter asserted. The court agreed with the prosecution and allowed the testimony to come in to allow the jury to evaluate the victim's credibility. The detective testified that, during the call, Hamilton instructed the victim "to continue to defy the court's order during testimony—or instructions."

### B. *The trial court did not abuse its discretion by admitting evidence of the phone call.*

The trial court has broad discretion to rule on the admissibility of evidence, including whether evidence is relevant or unduly prejudicial. (*People v. Wallace* (2008) 44 Cal.4th 1032, 1057–1058.) "Prejudice for purposes of Evidence Code section 352 means evidence that tends to evoke an emotional bias against the defendant with very little effect on issues, not evidence that is probative of a defendant's guilt." (*People v. Crew* (2003) 31 Cal.4th 822, 842.) Relevant evidence is any evidence that has " 'any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action.' " (*Wallace*, at p. 1058.) Relevant evidence includes

6

"evidence relevant to the credibility of a witness" (Evid. Code, § 210), which includes, among other things, the "existence or nonexistence of a bias, interest, or other motive" for giving the testimony (Evid. Code, § 780, subd. (f)). We review a trial court's ruling on the admissibility of evidence for abuse of discretion. (*Wallace*, at p. 1058.)

Here, evidence of the phone call between Hamilton and the victim during trial was relevant to the issue of the victim's bias. The prosecutor may properly cross-examine a witness to show bias, prejudice, interest, hostility or friendship toward a party that would bear on the question of the credibility of the witness. (*People v. Williams* (2008) 43 Cal.4th 584, 634 [evidence that witness' incarcerated husband had been prosecuted by prosecutor in current case was proper to show witness' bias against and hostility toward prosecution].) Evidence that Hamilton called the victim during a break in her trial testimony and instructed her how to testify is relevant to the credibility of that testimony. The phone call contradicted the victim's testimony that Hamilton did not pressure her to defy the trial court's orders and called into question her recantation testimony generally. Thus, the evidence was highly relevant to show the victim's bias against and hostile demeanor towards the prosecution as well as to impeach her credibility.

Hamilton contends that the phone call did not bear on the victim's credibility, rather, it was only evidence of a prior bad act that he tried to dissuade the victim from testifying. Evidence Code section 1101, subdivision (a) precludes the admission of evidence of prior bad acts to prove a defendant's conduct on a specified occasion. However, prior bad acts are admissible to impeach a witness. (*People v. Turner* (2017) 13 Cal.App.5th 397,

408.) As stated above, evidence of the phone call bore directly on the victim's bias and her credibility. Because the evidence was offered for that purpose only, it did not violate the general proscription against the use of prior bad acts evidence in Evidence Code section 1101, subdivision (a). (See *People v. Freeman* (1994) 8 Cal.4th 450, 494.) Accordingly, the trial court did not abuse its discretion in admitting evidence of the phone call.[3]

II.     Failure to instruct the jury on the lesser included offense of spousal battery was harmless.

Hamilton next contends that the trial court erred by failing to instruct the jury on the lesser included offense of battery on a spouse.

A trial court must instruct the jury sua sponte on general principles of law applicable to a case. (*People v. Breverman* (1998) 19 Cal.4th 142, 154.) This includes instruction on lesser included offenses supported by the evidence. (*Id.* at pp. 148–149.) When the charged offense includes a lesser offense, and there is evidence from which the jury could find that the lesser offense has been committed, the trial court must instruct on that lesser offense. (*Id.* at p. 157.) We review claims of failure to instruct on a lesser included offense de novo. (*People v. Waidla* (2000) 22 Cal.4th 690, 733.) We view the evidence in the light most

---

[3] The trial court offered to give a limiting instruction, however defense counsel never followed up with a request for such an instruction.

8

favorable to defendant to determine whether substantial evidence supports giving the instruction. (*Breverman*, at p. 163.)

Spousal battery is a lesser included offense of corporal injury to a spouse. (*People v. Hamlin* (2009) 170 Cal.App.4th 1412, 1457.) While spousal battery requires a willful and unlawful use of force or violence upon the defendant's spouse (§§ 242, 243, subd. (e)(1)), corporal injury to a spouse requires proof of the additional element of an injury that resulted in a traumatic condition (§ 273.5, subd. (a)). A " 'traumatic condition' " is "a condition of the body, such as a wound or external or internal injury, . . . whether of a minor or serious nature, caused by a physical force." (§ 273.5, subd. (d).)

Hamilton asserts that the jury could have found that he committed spousal battery if it believed the victim's testimony that the mistress caused her injuries and Hamilton merely tried to break up the fight and defend himself. The victim claimed that when she fought the mistress, Hamilton tried "to break us up," "pull me" and that, when the victim "thr[ew] punches at [Hamilton]," he tried to "wrestle me down." Even assuming this limited testimony was enough to trigger the trial court's duty to instruct on the lesser offense of spousal battery, we conclude the error was harmless.

We review a trial court's error in failing to instruct on a lesser included offense under the standard set forth in *People v. Watson* (1956) 46 Cal.2d 818. Under that test, we will reverse only if it appears the defendant would have obtained a more favorable outcome absent the error. (*Id*. at p 863.) "Such posttrial review focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration. In making that evaluation, an

9

appellate court may consider, among other things, whether the evidence supporting the existing judgment is so *relatively* strong, and the evidence supporting a different outcome is so *comparatively* weak, that there is no reasonable probability the error of which the defendant complains affected the result." (*People v. Breverman*, *supra*, 19 Cal.4th at p. 177.)

Here, the error was harmless because the evidence supporting the jury's guilty verdict of corporal injury to a spouse was relatively strong while the evidence of a spousal battery was comparatively weak. The victim called 911 after the domestic violence incident and told the operator that Hamilton injured her head. She did not mention the mistress during the call. When the responding deputy arrived, Hamilton left the scene and the victim had been badly beaten. Photographs of the victim's injuries were introduced at trial, and the victim identified herself in the photographs. When Hamilton returned home, over two weeks later, the victim hid in the bathroom and called 911 again, stating that Hamilton was trying to enter the bathroom and hurt her. Then, when deputies responded to this second call, the victim reported the prior incident and did not mention the mistress. In contrast, the evidence supporting the conclusion that Hamilton committed spousal battery was comparatively weak. The only evidence that Hamilton can point to is a few lines in the victim's wholly incredible recantation testimony, which was introduced after Hamilton threatened her from jail and tried to dissuade her from testifying. Absent further evidence, even if the trial court had instructed the jury on spousal battery, Hamilton would not have obtained a more favorable outcome.

## DISPOSITION

The judgment is affirmed.
NOT TO BE PUBLISHED.


KALRA, J.*

We concur:


EDMON, P. J.


LAVIN, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.