Filed 8/28/25  P. v. Watson CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E083325 |
| v. | (Super. Ct. No. RIF2303300) |
| ALIJAH JAHMAAL WATSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Jason Armand, Judge.

Affirmed with directions.

Joshua L. Siegel, under appointment by the Court of Appeal, for Defendant and

Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General,

Charles C. Ragland, Assistant Attorney General, Eric A. Swenson, and Marvin E. Mizell,

Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

Defendant and appellant Alijah Jahmaal Watson was charged with, among other things, forcibly raping two women. During his cross-examination, defendant testified that he "generally" would not masturbate in front of a woman he did not know in public. Over his objection, the trial court allowed the prosecution to present evidence in rebuttal that defendant followed a woman in his car while masturbating as she walked home.

Defendant contends the trial court erred in doing so. We disagree and affirm the judgment. We also order the trial court to correct clerical errors in the sentencing minutes and abstract of judgment.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2019, defendant and M.D. met online and, after texting each other, they agreed to meet in person to have sex. They agreed to meet at night in a parking lot behind some buildings. After talking and kissing, defendant told M.D. that he wanted to have sex with her outside of his car with the car door open, but M.D. did not want to do that because she did not want to be seen. Defendant suggested a more secluded spot, and M.D. hesitantly agreed.

When they arrived at the new spot in defendant's car, defendant repeated that he wanted to have sex with the car door open. By this point, M.D. had become uncomfortable, so she told defendant she was leaving and got out of his car. Defendant told M.D. she was not going anywhere, grabbed her, and then forcibly raped her.

In November 2020, D.M.A. met defendant online, and they agreed to meet at a park around 5:00 p.m. Defendant was about 20 minutes late, and it had gotten dark by the time he arrived.

After they walked and talked for a bit, defendant began asking D.M.A. sexual questions, which made her uncomfortable. D.M.A. noticed that defendant was masturbating and asked if he was, and he replied, "'Yeah, can't you see?'"

D.M.A. said she had to go and tried walking away, but defendant grabbed her and said, "'No, you're not going.'" Defendant then grabbed D.M.A.'s face and turned it. D.M.A. struggled with defendant and yelled for help, but she realized defendant was too strong to fend off, so she told him to do whatever he wanted and not to kill her. Defendant then forcibly raped D.M.A.

A jury convicted defendant of two counts of forcible rape (Pen. Code, § 261, subd. (a)(2); counts 1 & 3)[1] and one count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 4). As to counts 1 and 3, the jury found true the allegation that defendant committed a qualifying sex offense against more than one

---

[1] Unless otherwise indicated, all further statutory references are to the Penal Code.

victim under section 667.61, subdivision (e)(4). The trial court sentenced defendant to 30 years to life in prison.

## III.

## DISCUSSION

Defendant's principal argument on appeal is that the trial court erroneously admitted evidence that he masturbated in front of a woman he did not know in public. We disagree.[2]

After D.M.A.'s testimony, which included her testimony that defendant masturbated in front of her at a park, defendant took the stand. When asked on cross-examination about D.M.A.'s testimony, defendant claimed it was "untrue" that he masturbated in front of her. The prosecutor stated, "Masturbating in front of a woman you barely know . . . ," to which defendant replied, "That's not something I generally do, and she wouldn't be able to see me doing that if I'm sitting across from her." The prosecutor followed up by asking, "When you say, 'that's something I generally wouldn't do,' what do you mean by that?" After a sustained defense objection, the prosecutor stated, "You generally would not do that." Without further objection, defendant replied, "I would not do that."

---

[2] We assume without deciding that defendant did not forfeit any aspect of his argument on appeal.

After defendant finished testifying, the prosecutor asked to admit evidence of two uncharged incidents where defendant allegedly engaged in indecent exposure. The prosecutor argued the evidence should be admitted to impeach defendant's credibility, given his testimony that he would not masturbate in front of a woman in public.

After hearing arguments from the parties, the trial court ruled that the evidence of the incidents was relevant to assessing defendant's credibility and character, given that he made a "qualified" denial that he would ever masturbate in front of a woman he did not know in public. The court found, however, that having four witnesses testify (two for each incident) would be an undue consumption of time under Evidence Code section 352, so the court limited the prosecutor to evidence of the Rialto incident only. The court thus allowed the victim in the Rialto incident and the police officer who responded to the victim's report to testify.

The victim in the Rialto incident, C.M., testified that while walking home in July 2019, a man followed her in his car for 40 to 50 minutes while masturbating and staring at her the entire time. The investigating police officer testified that C.M. later identified defendant as the man in the car during an in-field lineup.

We review a trial court's ruling to admit or exclude impeachment evidence for abuse of discretion and will not disturb the ruling "unless the trial court 'exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.'" (*People v. Ledesma* (2006) 39 Cal.4th 641, 705.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no

5

reasonable person could agree with it." (*People v. Carmony* (2004) 33 Cal.4th 367, 377.) Because the trial court's discretion to admit impeachment evidence is broad, we generally will uphold its ruling. (*People v. Clark* (2011) 52 Cal.4th 856, 932 (*Clark*).)

We find no abuse of discretion here. In general, evidence "that has any tendency in reason to prove or disprove the truthfulness of a [witness's] testimony" is admissible. (Evid. Code, § 780, see also § 210.) More specifically, "'[r]ebuttal evidence is relevant and admissible if it tends to disprove a fact of consequence on which the defendant has introduced evidence.'" (*People v. Landry* (2016) 2 Cal.5th 52, 117.) Thus, a witness "may be impeached" on rebuttal with evidence of "any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*Clark*, *supra*, 52 Cal.4th at p. 931.)

Defendant's conduct toward C.M., if true, would amount to indecent exposure. (See § 314, subd. (1).) Incident exposure, whether a felony or a misdemeanor, is conduct involving moral turpitude. (See *People v. Ballard* (1993) 13 Cal.App.4th 687, 695-696 ["This requirement of lewdness, which is needed for a conviction of indecent exposure in California, supplies the assurance that a conviction for indecent exposure is one which necessarily involves moral turpitude."]; see also *People v. Hines* (2020) 58 Cal.App.5th 583, 609 [misconduct involving moral turpitude "need not relate to a felony conviction to be admissible"].)

6

Because defendant chose to testify and denied that he would ever masturbate in front of a woman he did not know in public, he placed his credibility on the matter squarely at issue. (See *People v. Turner* (2017) 13 Cal.App.5th 397, 409; *People v. Gutierrez* (2002) 28 Cal.4th 1083, 1139 ["By taking the stand, defendant put his own credibility in issue and was subject to impeachment in the same manner as any other witness."]) Evidence that defendant did in fact masturbate in public in front of a woman he did not know tended to undermine his testimony that he "would not do that." The evidence was thus relevant to his credibility because it had ""'"some tendency in reason" [citation] to shake one's confidence in his honesty.'" (*People v. Wheeler* (1992) 4 Cal.4th 284, 295.)

"'No witness[,] including a defendant who elects to testify in his own behalf[,] is entitled to a false aura of veracity.'" (*People v. Muldrow* (1988) 202 Cal.App.3d 636, 646.) And because defendant's alleged indecent exposure to C.M. was conduct "involving moral turpitude," the trial court properly found that evidence of the incident was relevant and admissible to impeach defendant's testimony, subject to balancing under Evidence Code section 352. (*Clark*, *supra*, 52 Cal.4th at p. 931; *People v. Pearson* (2013) 56 Cal.4th 393, 434 ["evidence of nonfelonious conduct reflecting moral turpitude may be admitted for purposes of impeachment"].)

The trial court did not abuse its discretion by finding the evidence admissible under Evidence Code section 352. Under Evidence Code section 352, a trial court may exclude evidence if its probative value is substantially outweighed by the probability that its admission will necessitate undue consumption of time, or create substantial danger of undue prejudice, or confusing the issues, or of misleading the jury. (*People v. Basuta* (2001) 94 Cal.App.4th 370, 386.)

"'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues.'" (*People v. Karis* (1988) 46 Cal.3d 612, 638.) "[E]vidence should be excluded as unduly prejudicial when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.'" (*People v. Doolin* (2009) 45 Cal.4th 390, 439.)

When determining whether to admit evidence of an incident involving moral turpitude for impeachment purposes, "the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify." (*Clark*, *supra*, 52 Cal.4th at pp. 931-932.)

8

Again, evidence of the Rialto incident was relevant to assess the credibility of defendant's testimony. The incident was not remote in time since it allegedly occurred in July 2019, less than six months before defendant raped D.M. and about 16 months before he raped D.M.A. The facts of the incident, though disturbing, are far less egregious than the facts of defendant's two instances of forcible rape. (See *People v. Mani* (2022) 74 Cal.App.5th 343, 372 [evidence of prior acts admissible in part because it was "clearly less inflammatory than the charged offenses"].) The evidence was not likely to consume an undue amount of time, nor was it likely to confuse the jurors, since the two witnesses' testimony about the Rialto incident was straightforward and did not take up much time.

Given all of this, the trial court reasonably found that the evidence of the Rialto incident should be admitted. The court's decision was not arbitrary, capricious, or patently absurd.

Finally, defendant argues, the People concede, and we agree that the minutes of sentencing and abstract of judgment incorrectly state that he was sentenced under the Three Strikes Law (§§ 667, subd. (b)-(i), 1170.12). Specifically, the minute order incorrectly says that defendant "was sentenced pursuant to [section] 667(B) through (I) or [section] 1170.12" and the abstract of judgment incorrectly says that he was "sentenced pursuant to [section] 667(b)-(i) or [section] 1170.12." We will order appropriate corrections. (*In re Candelario* (1970) 3 Cal.3d 702, 705.)

9

IV.

DISPOSITION

The judgment is affirmed.  The trial court is directed to correct the minutes of sentencing and abstract of judgment to eliminate any statement that defendant was sentenced pursuant to the Three Strikes Law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:

FIELDS
J.

RAPHAEL
J.