Filed 4/14/21  P. v. Dean CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JAMES RYAN DEAN,<br><br>  Defendant and Appellant. | F078605<br><br>(Super. Ct. No. F17903952)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James M. Petrucelli, Judge.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Matthew A. Kearney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant James Ryan Dean shot and killed his fiancée's ex-husband during a domestic dispute. The jury rejected the prosecution's theory that the murder was willful, deliberate and premeditated, but convicted defendant of second degree murder. (Pen. Code, §§ 187, 189, subd. (b).)[1] The jury also found that in committing a felony, defendant personally and intentionally discharged a firearm causing great bodily injury or death and he personally used a firearm. (§§ 12022.53, subd. (d), 12022.5, subd. (a).) Defendant admitted he suffered a prior serious felony conviction within the meaning of the "Three Strikes" law and served two prior prison terms. (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d), 667.5, former subd. (b).)[2]

The trial court sentenced defendant to a term of 15 years to life in prison, doubled to 30 years for the prior strike conviction, plus additional consecutive terms of 25 years to life in prison for the firearm enhancement under section 12022.53, subdivision (d), five years for the prior serious felony conviction enhancement, and one year for the prior prison term enhancement (§§ 667, subds. (a)(1), 667.5, former subd. (b)). The trial court stayed the firearm enhancement under section 12022.5, subdivision (a). In addition, the trial court imposed the maximum restitution fine of $10,000 under section 1202.4, subdivision (b)(1); a parole revocation restitution fine of $10,000 under section 1202.45, subdivision (a), suspended; a court operations assessment of $40 under section 1465.8; a court facilities assessment of $30 under Government Code section 70373; and a probation report fee of $296 under section 1203.1b.

On appeal, defendant claims the trial court erred in admitting impeachment evidence that he was found with a weapon in jail on two occasions. Pursuant to Senate

---

[1]    All further statutory references are to the Penal Code unless otherwise stated.

[2]    As discussed in part IV. of the Discussion, section 667.5, subdivision (b), was amended effective January 1, 2020, to limit the convictions upon which a prior prison term enhancement may be based. (Stats. 2019, ch. 590, § 1, pp. 1–4 (Senate Bill No. 136).)

Bills Nos. 620 and 1393,[3] defendant also seeks remand to allow the trial court to exercise its discretion regarding whether to strike the firearm enhancements and the prior serious felony conviction enhancement; and he challenges the imposition of fines, fees and court assessments without an ability-to-pay determination pursuant to *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*). In supplemental briefing, defendant requests we strike the one-year prior prison term enhancement pursuant to Senate Bill No. 136.

The People's position is that the trial court did not err in admitting the impeachment evidence but if error is assumed, it was harmless; and they dispute defendant's entitlement to any relief under *Dueñas*. However, they concede that remand is appropriate under Senate Bills Nos. 620 and 1393, and they concede that the prior prison term enhancement must be stricken under Senate Bill No. 136.

We find no error with the admission of the impeachment evidence, we agree with the parties that remand to allow the trial court to exercise its discretion under Senate Bills Nos. 620 and 1393 is appropriate on this record, we strike the prior prison term enhancement under Senate Bill No. 136 and, on our own motion, we direct the trial court to correct its sentencing error with respect to the failure to first impose and then stay the sentence under section 12022.5, subdivision (a). (*People v. Gonzalez* (2008) 43 Cal.4th 1118, 1129–1130.) Given the need to remand for a resentencing hearing on these issues, defendant's *Dueñas* claim is moot and we do not consider it.

## FACTUAL SUMMARY

### I. Prosecution Case

#### A. The Shooting

Diana P. was raising her one-year-old granddaughter, Ava, although without a formal custody agreement, and in July 2017, she, defendant and Ava were staying

---

[3] Statutes 2017, chapter 682, sections 1–2, pages 1–4 (Senate Bill No. 620 or Sen. Bill No. 620) and Statutes 2018, chapter 1013, sections 1, 2, pages 1–6 (Senate Bill No. 1393 or Sen. Bill No. 1393).

temporarily with Diana's son and his family in their apartment. On July 8, 2017, defendant drove Diana's son, his girlfriend, and their child to the store. Ava was also with them. During the ride, defendant was waving a handgun in his lap to the tune of the music, but he put it under the seat at the request of Diana's son's girlfriend.

Diana's daughter Alyssa, who is Ava's mother, called several times that day because she wanted to pick Ava up for a visit, but Diana kept telling her no. Alyssa's boyfriend drove her to the apartment complex in the early evening. Her father, Jay, who was Diana's ex-husband, was also in the car and the two men waited while Alyssa went to get Ava. By then, defendant had returned from the store with Ava, and he went inside the apartment to tell Diana that Alyssa was there trying to take Ava. Diana went outside and found Alyssa putting Ava into a car seat that was on the ground. They argued and Diana refused to let Alyssa have Ava.

Alyssa returned to the car crying. Jay then got out of the car, beer bottle in hand, and walked to where Diana was standing outside in the courtyard area. Jay told Diana to let Alyssa have Ava. Diana denied they were fighting as they discussed Ava, but Alyssa testified that she returned to the apartment complex because she heard her parents yelling.

Diana, who testified she dislikes weapons, knew defendant had a handgun, and she described an incident two weeks earlier during which she became angry at him when she saw his gun. He laughed and pointed the gun at her, but he told her that he would never hurt her when she asked if he was going to shoot her. When Jay showed up that evening, Diana testified that defendant was "clutching" his gun, although she did not see the gun at that point.

After Jay gave defendant a dirty look and said, "'What's up,'" Diana pushed defendant inside the apartment and told him several times, "'Not my baby's dad.'" Diana testified that Jay was abusive toward her during their marriage and he wanted to fight with defendant at that point. Diana did not know defendant to be a fighter, however, and right before the incident, he told her "he was too pretty to fight."

4.

Jay ultimately said that he was "'not going to fight for [Ava] like this,'" and after Diana had pushed defendant inside the apartment, Jay walked away toward the apartment complex gate with Alyssa following behind him.

Alyssa then turned back toward the apartment and yelled, "'Fuck you, you bitch. You punk-ass bitch.'" Diana testified that Jay "back[ed] up Alyssa" and said, "'Yeah, you're a bitch. You're a punk-ass bitch.'" Defendant then said, "'No. The both of ya'll are bitches.'" Diana was holding defendant inside the apartment and she told him to let them leave. Alyssa was also trying to pull Jay away. However, Jay said something about defendant calling his daughter a bitch, took his shirt off and ran back toward the apartment, shaking Alyssa off in the process. He was not armed with anything.

Defendant pushed Diana away from the doorway and went outside. She tried to get in front of defendant's gun, but did not make it in time. A neighbor heard Diana tell defendant not to do it, and Diana said that Jay had his arms up when defendant pulled his gun out and fired one shot, striking Jay. Alyssa estimated the two men were between 10 and 11 feet apart at the time. After firing the single shot, defendant walked to his car and drove away.

The bullet perforated an artery in Jay's abdomen and although he was alive when police arrived, he bled to death sometime thereafter.

Defendant, who altered his appearance after the shooting by shaving off his long hair, was located the following night by police and arrested.

## B. Postarrest Jail Calls

The prosecutor introduced evidence of five telephone calls defendant made from jail after his arrest. In the first call with his mother, defendant denied shooting Jay and said he was not at the scene. He also expressed his belief that "they" had to place him at the scene with "hard evidence" like DNA or video surveillance footage.

5.

In the next call with an unidentified man, defendant said, "[Y]ou know what our dad[']s taught us. Violence is always the option, or always the key." He then said, "Yes. Violence is always the key. If you don't get what you want, violence. You'll get it."

In the third call, which occurred after the preliminary hearing, defendant talked to his mother about defending himself and said he was trying to get voluntary manslaughter over first degree murder. He denied he planned to murder the victim. His mother pointed out that he said he did not plan to do it, but he had also said he was not there and did not do it. Defendant stated that three people were saying he was at the scene and he could no longer deny he was there.

In the fourth call, which occurred after the evidentiary phase of trial commenced and while defendant's mother was subject to a subpoena, defendant asked why she was doing this. He told her not to "call that motherfucker back" and not to answer the phone. He hung up on her after she said he was putting her in a bad position.

In the fifth and final call approximately one hour later, a child answered the phone. Defendant asked for his mother, but she was not at home. He told the child to tell his mother to answer the phone when he called back. The child responded, "I don't know if she will," and defendant said, "That's crazy. You—she won't answer the phone for me, but she'll answer it for the fuckin' prosecutor." Defendant then told the child to tell her not to answer the phone, even for him, and that he would call her after the trial.

## II.    Defense Case

Defendant elected to testify. At the outset, he admitted he had a prior felony conviction for first degree burglary and was caught with a weapon in jail on two occasions. He also admitted he shot Jay, but said he feared for himself and Diana, who was pregnant with his child.[4]

---

[4]    Other than defendant's testimony, there was no evidence that Diana was pregnant with defendant's child at the time of the shooting, and defendant did not have any knowledge that she had given birth to a child.

Defendant testified that when he returned with Ava after dropping Diana's son and family off at a store, Alyssa came around the corner and grabbed Ava. Defendant went to tell Diana, and she and Jay then argued. As Jay and Alyssa were leaving, Jay turned and told Diana, "just wait, bitch."

Approximately 15 minutes later, Jay and Alyssa returned. Jay had a 32-ounce beer in his hand. Alyssa argued with Diana and then said, "come on, dad, let's go. They're both bitches." Defendant responded, "nah, fuck that, you're a bitch." Jay then said, "nah, fuck that, you are not going to call my daughter a bitch," took off his shirt, and "rushed" defendant. Defendant pulled his gun from his waistband, shot Jay, and drove off. He later threw his gun in a canal.

Defendant denied he heard anyone tell him not to shoot Jay, but he admitted that when he shot Jay, Jay did not have anything in his hands. Defendant also admitted that he knew he was not legally allowed to have a gun, that the "motherfucker" he was referring to in the jail call with his mother was the prosecutor, and that he told his mother not to come to court even though he knew she had been subpoenaed. Regarding the jail call that referred to violence, he denied he lived violently and stated that was just what his father always said. He also said he was concerned for his mother's safety and was not trying to dissuade her from testifying.

## DISCUSSION

### I.     Challenge to Impeachment Evidence

#### A.     Background

At the close of the People's case-in-chief, defendant elected to testify and the prosecutor sought to admit impeachment evidence that defendant had a prior burglary conviction from 2013 and was found in possession of a weapon twice while in custody following his arrest for Jay's murder. Trial counsel objected to the evidence under Evidence Code section 352, and, if admitted, requested that the incidents be referred to as

a felony conviction and felony charges. The trial court overruled the objection, denied the request for sanitization, and ruled the evidence was admissible.

During defendant's subsequent direct examination, he confirmed that he was convicted of first degree burglary in 2013, and in response to counsel's inquiry whether he had a weapon in a jail setting on January 18, 2018, and April 12, 2018, he responded, "Still fighting that." The prosecutor did not question defendant regarding his possession of a weapon in jail, and neither party referred to it during closing argument.

### B. Admissibility of Prior Misconduct for Impeachment

Under California law, evidence is relevant if it has "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action" (Evid. Code, § 210), and all relevant evidence is admissible except as otherwise provided by statute (Evid. Code, § 351). At issue here, Evidence Code section 352 provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury."

"A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931, fn. omitted, citing *People v. Wheeler* (1992) 4 Cal.4th 284, 290–296 & *People v. Mickle* (1991) 54 Cal.3d 140, 168; accord, *People v. Turner* (2017) 13 Cal.App.5th 397, 408.) "'[T]he admissibility of any past misconduct for impeachment is limited at the outset by the relevance requirement of moral turpitude. Beyond this, the latitude [Evidence Code] section 352 allows for exclusion of impeachment evidence in individual cases is broad.' [Citations.] When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for

8.

the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify.  [Citations.]  Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction.  This is because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude." (*People v. Clark*, *supra*, at pp. 931–932.)  "'[C]ourts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.'" (*Id.* at p. 932.)

On appeal, we presume the trial court's evidentiary ruling is correct and defendant bears the burden of demonstrating error.  (*People v. Giordano* (2007) 42 Cal.4th 644, 666; *People v. Anthony* (2019) 32 Cal.App.5th 1102, 1139–1140.)  "Because the court's discretion to admit or exclude impeachment evidence 'is as broad as necessary to deal with the great variety of factual situations in which the issue arises' [citation], a reviewing court ordinarily will uphold the trial court's exercise of discretion [citations]" (*People v. Clark*, *supra*, 52 Cal.4th at p. 932; accord, *People v. Anderson* (2018) 5 Cal.5th 372, 407; *People v. Turner*, *supra*, 13 Cal.App.5th at p. 408), unless "'"the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice'"'" (*People v. Clark* (2016) 63 Cal.4th 522, 572; accord, *People v. Johnson* (2019) 8 Cal.5th 475, 521; *People v. Jackson* (2016) 1 Cal.5th 269, 320–321).

## C.    Analysis

After defendant's arrest in this case, he was twice found in possession of a jail shank and charges for those offenses were pending at the time of trial.  Defendant acknowledges that misconduct may be admissible for impeachment even if it does not result in a felony conviction, and he does not argue the two incidents were irrelevant or did not involve moral turpitude.  However, he claims that the evidence should have been

excluded due to "problems of proof, risk [of] unfair surprise and confusion." We agree with the People that the trial court did not abuse its discretion under Evidence Code section 352.

Defendant does not cite to any evidence in the record or advance a more developed legal argument in support of his conclusory assertion regarding problems of proof, unfair surprise and confusion in this case. Given that the two incidents of misconduct occurred during the eight months preceding trial and led to criminal charges that were pending at the time of trial, the record does not suggest any issue concerning proof or unfair surprise, and nothing about the evidence was confusing or misleading. Notably, the evidence was addressed in one question and one answer on direct examination. The prosecutor did not pursue the issue during cross-examination and did not rely on it during closing argument.

Nor was the probative value of the evidence otherwise "substantially outweighed by the probability that its admission [would] … create substantial danger of undue prejudice .…" (Evid. Code, § 352.) "'"The 'prejudice' referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues."'" (*People v. Jones* (2017) 3 Cal.5th 583, 610.) The misconduct here was close in time to the crime and evidence that defendant had an unspecified weapon in jail on two occasions was not particularly inflammatory, either compared with the crime of murder or standing alone.

"No witness including a defendant who elects to testify in his own behalf is entitled to a false aura of veracity." (*People v. Beagle* (1972) 6 Cal.3d 441, 453, disapproved on another ground by *People v. Diaz* (2015) 60 Cal.4th 1176, 1190–1191; accord, *People v. Clark*, *supra*, 52 Cal.4th at p. 932.) The evidence was admitted for the limited purpose of impeaching defendant's credibility, and the jury was instructed accordingly. (*People v. Fayed* (2020) 9 Cal.5th 147, 192 ["We presume the jury followed the trial court's instruction absent evidence to the contrary."].) Under the

foregoing circumstances, we find no error in the admission of the evidence, which forecloses defendant's claim that the admission also violated his right to due process under federal law. (*People v. Winbush* (2017) 2 Cal.5th 402, 458 ["Proper admission vitiates [a] defendant's constitutional claim."].)

## II.    Senate Bill No. 620

As previously summarized, the trial court sentenced defendant to an indeterminate term of 25 years to life for the firearm enhancement under section 12022.53, subdivision (d), and it stayed the enhancement under section 12022.5, subdivision (a). Effective January 1, 2018, Senate Bill No. 620 amended sections 12022.5 and 12022.53. Pursuant to those amendments, "[t]he court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§§ 12022.5, subd. (c), 12022.53, subd. (h).)

Defendant requests remand under Senate Bill No. 620 to allow the trial court to exercise its discretion to strike the firearm enhancements and he advances a retroactivity argument with which the People concur. Defendant was sentenced on December 13, 2018, however, and therefore, the issue is not whether he is entitled to remand under a change in the law retroactive to judgments not yet final on appeal, but whether the trial court was aware of the scope of its discretion to strike one or both firearm enhancements at the time of sentencing.

"'Defendants are entitled to sentencing decisions made in the exercise of the "informed discretion" of the sentencing court. [Citations.] A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, we have held that the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez* (2014) 58 Cal.4th 1354,

11.

1391; accord, *People v. Flores* (2020) 9 Cal.5th 371, 431–432; *People v. Yanaga* (2020) 58 Cal.App.5th 619, 625.)  However, as previously stated, "we presume that a judgment or order of the trial court is correct, '"[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown."'" (*People v. Giordano*, *supra*, 42 Cal.4th at p. 666.)  Further, remand is not required when it would be an idle act.  (*People v. Flores*, *supra*, at p. 432, citing *People v. McDaniels* (2018) 22 Cal.App.5th 420, 425; accord, *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409; *People v. Allison* (2019) 39 Cal.App.5th 688, 705–706.)

Here, the probation officer's report described the firearm enhancements as mandatory, the trial court repeated that language during its oral pronouncement of judgment, and neither party apprised the court of its discretion under sections 12022.53 and 12022.5 as amended by Senate Bill No. 620.  Moreover, nothing in the court's oral pronouncement of judgment "'clearly indicate[s]'" that the trial court would have reached the same conclusion had it been aware of the scope of its discretion.  (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)  The parties agree that remand is required and under these circumstances, we concur.  (*People v. Yanaga*, *supra*, 58 Cal.App.5th at p. 628.)

We note an additional matter with respect to the sentence on the firearm enhancement under section 12022.5, subdivision (a).  (*People v. Smith* (2001) 24 Cal.4th 849, 852, quoting *People v. Welch* (1993) 5 Cal.4th 228, 235 [an unauthorized sentence is "reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court'"].)  The statute provides for an additional term of three, four, or ten years, and although the trial court stayed the enhancement in accordance with section 12022.53, subdivision (f), it neglected to select and impose a term.  (*People v. Gonzalez*, *supra*, 43 Cal.4th at pp. 1129–1130; *People v. Vega* (2013) 214 Cal.App.4th 1387, 1395–1396.)  If the trial court declines to **strike** the enhancement under section 12022.53,

subdivision (d), on remand, it must nevertheless correct the error regarding section 12022.5, subdivision (a), by imposing and then staying the sentence.[5]

## III.    Senate Bill No. 1393

Next, the trial court also imposed a five-year enhancement for defendant's prior serious felony conviction, pursuant to section 667, subdivision (a)(1).  At the time defendant was sentenced, imposition of the prior serious felony conviction enhancement was mandatory.  Effective January 1, 2019, Senate Bill No. 1393 amended sections 667, former subdivision (a)(1), and 1385, former subdivision (b), and granted trial courts the discretion to strike the enhancement.

"[W]e presume that newly enacted legislation mitigating criminal punishment reflects a determination that the 'former penalty was too severe' and that the ameliorative changes are intended to 'apply to every case to which it constitutionally could apply,' which would include those 'acts committed before its passage[,] provided the judgment convicting the defendant of the act is not final.'  ([*In re*] *Estrada* [(1965)] 63 Cal.2d [740,] 745 [(*Estrada*)].)  The *Estrada* rule rests on the presumption that, in the absence of a savings clause providing only prospective relief or other clear intention concerning any retroactive effect, 'a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not.'"  (*People v. Buycks* (2018) 5 Cal.5th 857, 881; accord, *People v. Frahs* (2020) 9 Cal.5th 618, 634 ["[I]n order to rebut *Estrada*'s inference of retroactivity concerning ameliorative statutes, the Legislature must 'demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.'"].)

---

[5]    Alternatively, the trial court has the discretion to strike the enhancement under section 12022.53, subdivision (d), and impose the enhancement under section 12022.5, subdivision (a), or strike both firearm enhancements.  (§§ 12022.53, subd. (h), 12022.5, subd. (c).)

Courts of Appeal considering Senate Bill No. 1393 and, in an analogous context, Senate Bill No. 620, have uniformly held that the changes apply retroactively to judgments not yet final on appeal. (E.g., *People v. Zamora* (2019) 35 Cal.App.5th 200, 207–208 [Sen. Bills Nos. 620 and 1393]; *People v. Garcia* (2018) 28 Cal.App.5th 961, 972–973 [Sen. Bill No. 1393]; *People v. Chavez* (2018) 22 Cal.App.5th 663, 711–712 [Sen. Bill No. 620]; *People v. Arredondo* (2018) 21 Cal.App.5th 493, 506–507 [Sen. Bill No. 620].) As Senate Bill No. 1393 does not contain a savings clause and there is no indication that the Legislature intended any limitation on its retroactive application, we agree with the parties that it applies to this case in accordance with the *Estrada* rule.

We also agree that remand is required to allow the trial court to exercise its discretion pursuant to the change in the law effected by Senate Bill No. 1393. As discussed above, nothing in "the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.'" (*People v. Gutierrez*, *supra*, 58 Cal.4th at p. 1391.)

## IV.    Senate Bill No. 136

Finally, pursuant to section 667.5, subdivision (a), and subject to an exception not relevant here, trial courts are required to impose a three-year sentence for each prior, separate prison term served by the defendant for a violent felony where the current offense is also a violent felony, as defined in subdivision (c) of the statute. For other felonies, pursuant to former subdivision (b) of section 667.5, and subject to exceptions not relevant here, trial courts are required to impose an additional one-year term for each prior, separate prison term or county jail felony term. As amended by Senate Bill No. 136, subdivision (b) of section 667.5 limits imposition of the additional one-year term to each prior, separate prison term served for a conviction of a sexually violent offense as defined in Welfare and Institutions Code section 6600, subdivision (b).

We agree with the parties that Senate Bill No. 136 is also retroactive under the *Estrada* rule, and that defendant's prior conviction for first degree burglary is not a

qualifying offense under section 667.5, subdivision (b), as amended. Therefore, we order the one-year sentence enhancement stricken.[6]

## DISPOSITION

The judgment is modified to reflect that the one-year prior prison term enhancement imposed under section 667.5, former subdivision (b), is stricken pursuant to Senate Bill No. 136. Additionally, this matter is remanded to the trial court to exercise sentencing discretion under Senate Bills Nos. 620 and 1393 with respect to the firearm and prior serious felony conviction enhancements. Should the trial court decline to strike the firearm enhancement under section 12022.53, subdivision (d), it shall impose and then stay the firearm enhancement under section 12022.5, subdivision (a). Following resentencing, the trial court shall issue an amended abstract of judgment and forward a certified copy to the appropriate authorities. The judgment is otherwise affirmed.


MEEHAN, J.

WE CONCUR:



POOCHIGIAN, Acting P.J.



DETJEN, J.

---

[6] As the People argue, remand for resentencing on this issue is not required given defendant's mandatory sentence of 30 years to life (*People v. Buycks*, *supra*, 5 Cal.5th at p. 896, fn. 15), but as discussed, remand is necessary due to the changes in the law effected by Senate Bills Nos. 620 and 1393.